

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

_____

*970 Broad Street, 7th floor*  973-645-2700
*Newark, New Jersey 07102*

February 21, 2020

The Honorable Claire C. Cecchi
United States District Judge
Martin Luther King Jr. Federal Building and U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

        Re:   *United States v. Matthew Brent Goettsche, et al.*,
                Crim. No. 19-877

Your Honor:

      The United States of America, through the undersigned, respectfully submits this letter to: (1) provide this Court with a proposed scheduling order and justifications in support thereof; (2) explain why this case should be designated as complex for purposes of the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(B)(ii); and (3) request that the Court enter the attached continuance order excluding time under the Speedy Trial Act under Section 3161(h)(7)(B)(ii).

      The parties have met and conferred on a proposed scheduling order. Defendant Abel agrees with the Government's proposed scheduling order. Defendants Goettsche and Weeks do not.

      By way of background, the Government has charged five defendants with orchestrating a global fraudulent scheme that operated over the Internet from approximately 2014 until the defendants were arrested as a part of an organized takedown on December 10, 2019. Prior to the takedown, the Government's investigation was largely covert and consisted of, among other things, the execution of several search warrants on electronic cloud-based accounts maintained by the defendants and their coconspirators. As a part of the takedown, the Government executed search warrants at four residences, seized at least 88 electronic devices, and issued several other requests for records. After the takedown, the Government located and obtained a copy of at least three versions of the Bitclub Network server.

All three defendants detained in the United States contested detention in hearings that took significant resources.  Three of the defendants are detained in the United States, one is detained in Germany, and one has evaded capture outside of the United States.  The defendant who is detained in Germany is awaiting the extradition process.  On January 15, 2020, defendants Goettsche, Weeks, and Abel appeared before Your Honor for their arraignment hearing.  Following their initial appearance, defendants Goettsche and Weeks again contested detention, which led to several rounds of additional briefing and approximately 8 hours of argument before Judge Hammer.

The Government has provided defense counsel with a copy of its current proposed scheduling order on Tuesday, February 13, 2020, the schedule of which is identical to the version the Government is proposing to this Court, save the addition in this attached version that the Government will provide a copy of the BitClub Network server in its initial production on March 17, 2020 (a provision added based on the defendants' requests).

As discussed further below, the Government's proposed scheduling order is reasonable in light of the complexities of this case.

## I.   This Case is "Complex" As Defined By Section 3161(h)(7)(B)(ii)

This Court has already previously determined, with respect to defendant Abel, that this case is complex.  On February 10, 2020, this Court entered a continuance order that was agreed to by the Government and defendant Abel, in which the Court recognized that the case is unusual or complex and that discovery will be voluminous.  The below is further explanation in support of making the same determination as to the prosecutions of defendants Goettsche and Weeks, who have not agreed to this designation.

The circumstances of this case warrant a finding that this case is complex under 18 U.S.C. § 3161(h)(7)(B)(ii).  That subsection provides that, in determining whether an "ends of justice" continuance is appropriate, the Court shall consider:

> whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by [the Speedy Trial Act].

18 U.S.C. § 3161(h)(7)(B)(ii).  Here, these factors favor the Government's proposed continuance.  There are five defendants in this case—one of whom is detained and overseas and another defendant who remains at large.  The allegations in this case involve events spanning more than five years' time and

- 2 -

involves a large-scale fraud by way of shared, fractional interests of bitcoin mining pools that were promoted to individuals all around the world to attract hundreds of millions of dollars, which was sent—by way of the defendants—through an elaborate web of cryptocurrency and traditional banking accounts.

During the covert portion of the Government's investigation, the Government collected copies of electronic accounts operated by several of the defendants and their coconspirators. The Government obtained at least 1.8 million records from this process. The records from these accounts—particularly records received by Facebook—were provided to the Government in formats that are difficult to review efficiently and/or without proprietary tools. *Accord Dolney v. United States*, 2011 WL 73076 (E.D.N.Y. 2011) (noting that court acted within its discretion in deeming $21 million securities fraud case a complex action given the number of defendants and extensiveness of discovery, which consisted of "at least 40 boxes of documents"); *United States v. Astra Motor Cars*, 352 F. Supp. 2d 367 (E.D.N.Y. 2005) (deeming complex a multi-defendant case with thousands of documents in discovery).

On December 10, 2019, the Government searched four residences, seized approximately 88 electronic devices, and made a variety of additional document requests to various entities and individuals around the world. Of those electronic devices, law enforcement has been able to "image" (i.e., create a bit-for-bit copy of the device that is effectively identical to the device itself) several of the devices; however, several of the devices have not been imaged because either (1) they are not capable of being imaged; (2) they are password protected and/or encrypted and so law enforcement has not been able to image them; or (3) the devices remain in the queue to be analyzed given the large volume of electronic devices seized in this case and the overall demand for forensic analysis.

After December 10, 2019, law enforcement obtained a copy of a version of the BitClub Network server, which was taken to the RCFL (the Federal Bureau of Investigation's computer forensics laboratory). The lead case agent received a copy of this server thereafter. The server, in its "zipped" (compressed file size) form, is approximately 4 terabytes. To put that in perspective, the Government provides the following chart taken from an online source:

*See* Melvin Foo, *How Much Can a 1TB Hard Drive Hold?*, PC NINJA (FEB. 8, 2012), http://www.pcninja.us/how-much-can-a-1-tb-hard-drive-hold/ [https://perma.cc/LG5Z-LLN8] (*cited in* Jenia I. Turner, *Managing Digital Discovery in Criminal Cases*, 109 J. Crim. L. & Criminology 237, 311 n.70 (2019)).

The Government's investigation remains active and ongoing, and the Government continues to collect records in furtherance thereof.

The complex nature of this case is highlighted further by the defense teams amassed by the defendants. Both Goettsche and Weeks have hired several partners at major law firms to help their defense in this case. Indeed, the parties spent at least eight hours over the course of two days to address bail revocation, during which both defendants argued that the Government's charges evidence a misunderstanding of the factual underpinnings of the scheme.

Defendants' briefing in connection with their requests for bail highlights further that this case is complex. Indeed, defendant Goettsche stated in his brief that "[t]his case involves an enormous amount of discovery seized from Mr. Goettsche and various businesses that relates to the digital currency industry, which no one disputes is extraordinarily complex." *See* Goettsche Motion for Revocation, ECF No. 36, at 2. While Defendant Weeks similarly highlighted that "the enormous volume of discovery in this case virtually ensures that the pretrial period of detention will be much longer" and stated

further that "the charges relate to esoteric matters involving cryptocurrency mining, hash rates, blockchains, complex algorithms, and mining pools[.]"  *See* Weeks Reply, ECF No. 37, at 18-19.  These statements support a finding that the case's complexity warrants a continuance in this case.  *See United States v. Paul*, 326 F. Supp. 2d 382, 391 (E.D.N.Y. 2004) ("Defense statements on record . . . support a continuing finding of complexity.").

In light of the above, a continuance through October 31, 2020—the month of the Government's proposed status conference—is appropriate in light of the complexity of the case given "the number of defendants, the nature of the prosecution," and "the existence of novel questions of fact."

## II.  The Government's Proposed Scheduling Order Sets Forth a Reasonable Schedule for Discovery In This Case

The Government's proposed scheduling order sets forth a reasonable schedule in light of the complex nature of the discovery involved in this prosecution.

First, the scheduling order provides that the parties work together to submit a protective order in this case to the Court, the finalization of which has been complicated due to a receiver having been appointed in a Montana lawsuit involving defendant Goettsche.[1]  The issuance of an appropriate protective order is important in this case because discovery involves financial and identifying information of the defendants' victims.

Second, the Government's proposed scheduling order provides that the defendants will be provided with several items by March 17, 2020, including: (1) with certain exceptions, recorded statements of the defendants; (2) exculpatory evidence known to the Government; (3) confessions that implicate codefendants; (4) the first round of discovery in a series of rolling productions; and (5) a copy of the BitClub Network server that law enforcement located and obtained a copy of after the defendants were arrested in this case.

The March 17, 2020 date as the date to start providing materials to defense counsel is appropriate here because it will allow the Government sufficient time to (1) finalize for production a significant set of documents to be turned over to the defense and (2) copy over the server data to hard drives provided by defense counsel.  Approximately 1.8 million records—the majority of which were obtained during the covert portion of the Government's

---

[1] The Government has had a preliminary discussion with the receiver regarding the need to address both the discovery and protection concerns in the criminal case and the receiver's reporting duties to the district court in the Montana matter.

investigation—are currently housed on a document review platform.  The process of finalizing a set of materials and producing those materials takes anywhere between 2-4 weeks, depending on the size of the records to be finalized and produced.  The Government is working to produce at least 500,000—and hopefully more—records from this platform to defense counsel by March 17, 2020.

Additionally, it takes considerable time to transfer over the data of the BitClub Network server onto hard drives provided by defense counsel.  First, the hard drive provided by counsel must be wiped to ensure that it does not corrupt the system.  This process can be very time consuming.  By way of example, a hard drive recently provided by defense counsel to the Government took approximately 154 hours to wipe.  After the device is wiped, it takes approximately a day for the server data to be loaded onto the drive, and then can take up to two additional days to verify that the data transferred appropriately.

The proposed August 28, 2020 date for the Government to complete the rolling production of records in this case is reasonable in light of the significant electronic discovery seized in this case—including a significant volume of devices that were seized on the date of the defendants' arrests—along with the need to conduct an appropriate filter review to protect the defendants' attorney-client privilege.

As outlined above, the Government obtained copies of several electronic accounts belonging to the defendants in this case.  Out of an abundance of caution, the Government has segregated many records as being potentially privileged and has provided defense counsel with an opportunity to review the documents, propose additional search terms, and assert privilege when appropriate, and return the non-privileged materials to the prosecution team so that those materials may be produced.  The Government has also taken a similar approach to those materials that were seized from houses and persons on the December 10, 2019 coordinated takedown.  The Government's cautious approach means that the prosecution team has not been able to review these devices and/or records.  The outlined scheduling order will provide the parties with a reasonable amount of time for that review.

Finally, following the rolling productions and production of discovery by defense counsel, the Government proposes that the parties participate in a status conference with the Court sometime in October 2020, which will allow the parties sufficient time to discuss any potential discovery disputes and (hopefully), if possible, encourage the parties to resolve any discovery issues without unnecessarily wasting the Court's resources.

### III.  The Competing Proposal Submitted By Defense Counsel Does Not Include Reasonable Demands

While the Government intends to respond more fully to any competing scheduling order submitted by Goettsche and Weeks, it is worth highlighting that several anticipated aspects of the proposed order, based on a version sent to the undersigned on the late afternoon of February 20, 2020 (the "Weeks draft"), are not feasible, for several reasons.

First, the Weeks draft requested that the initial production of documents occur by March 6 as opposed to March 17.  If the Government were to provide defense counsel with an initial production by March 6, it could not be as comprehensive as the Government's proposed March 17 production because of technical and timing limitations of readying that amount of data for disclosure.

Second, the proposed Weeks draft included a provision whereby the Government would return all seized devices to the defendants by March 6, 2020 as a part of its initial production.  The return of the defendant's electronic devices seized at the time of their arrests is not possible for the majority of the devices in this case.  As explained to defense counsel, the Government is willing to provide defense counsel with those electronic devices that were seized *and were able to be copied bit-for-bit* through a computer forensic process, so long as defense counsel and defendants agree to waive any argument to authenticity.  However, as counsel knows, many of the electronic devices that were seized by the Government cannot be copied over identically and some cannot be copied at all because they are password protected and/or encrypted.  The Government cannot agree to return to the defendants seized evidence of which it does not have an identical copy.[2]

Third, the proposed Weeks draft contemplates that the Government will turn over all of the 1.8 million records it seized covertly in connection with this case if they are responsive to Rule 16.  Such a request is unreasonable given the complex nature of the case, especially where the Government is attempting to produce at least 500,000 records to the defendants as a part of its initial production.

*   *   *   *

---

[2] The Government is aware, for example, that certain defendants communicated using encrypted or otherwise protected applications that may not be captured and/or processed by standard forensic programs.  In that case, the application in question may only be visible on the physical device itself.

Accordingly, the Government respectfully requests that the Court: (1) adopt the Government's proposed scheduling order in this case, to which defendant Abel has agreed; and (2) make a determination that this case is an unusual or complex case within the meaning of the Speedy Trial Act 18 U.S.C. § 3161(h)(7)(B)(ii), in light of the number of defendants, the nature of the prosecution, and the existence of novel fact questions, such that it is unreasonable to expect adequate preparation for pretrial proceedings and trial within 70 days, and that discovery in this case is expected to be voluminous, such that additional time is necessary to ensure that the parties, taking into account the exercise of due diligence, will have sufficient time to review and inspect discovery and further investigate the charges in this matter, such that the ends of justice served by granting a continuance through October 31, 2020 outweigh the best interests of the public and the defendants in a speedy trial.

Respectfully submitted,

CRAIG CARPENITO
United States Attorney

By: Jamie L. Hoxie
Assistant U.S. Attorney